We will hear argument in United States v. Crandell Caroline Zabluski May I please the court? My name is Caroline Zabluski and I represent the United States. I'd like to reserve four minutes for rebuttal. Granted. You don't appeal the district court's finding that the officers lack reasonable suspicion, correct? No, Your Honor. This appeal is based on the government's alternative argument, which the court clearly understood, that the court legally erred in rejecting that the officers had consent, and the court legally erred in finding that consent was irrelevant because their approach and inquiry were motivated by an anonymous tip. And essentially your argument is what? Consent wipes away all sins? Yes, but there are two different bases that you could stop someone. You can either have reasonable suspicion or... Why don't you appeal? Just let me finish the thought and then I'll keep my mouth shut. Yes. Which I always promise and I always lie. Yeah, same here. That's okay. Join the club. Why wasn't there reasonable suspicion? Is it because the anonymous tip was uncorroborated or was it because you're so convinced there was no seizure you don't need that argument? We're absolutely convinced that there was no seizure. We have concerns about the tip, whether there was sufficient information about the tipster, and whether it was corroborated. Oh, I investigate. Thank you. And so isn't it more accurate to say instead of consent covers all sins, as to example put it, that there was no sin to be covered because the police can approach anybody they want with a simple question? Yes, Your Honor. All right. Now, on that point, what are we to make of the district court's statement that it's balderdash that a reasonable person would have felt free to walk away under these circumstances? Is that a finding of fact about these specific circumstances? Or is that a statement of law about what an objectively reasonable person would feel about three officers of the law walking up to you generally? What are we to make of that statement? I think ultimately that's a legal conclusion that someone was seized in this context, and that's a legal conclusion that Drayton- Well, balderdash didn't make it into the opinion. That was just a comment. But it's an excellent word. It's a wonderful word. I wanted to use it today. I haven't figured out how. It was an observation in the course of the proceedings. Well, I come from a rural Ohio. We never used that. We used another word. It was a little more profane, but that's okay. I think Drayton makes it clear that the observations that follow balderdash are not grounds to find lack of consent. Well, what was the balderdash? That was as to the statement where- let's see if we can put this. They come up to Crandall on the street, and they say, I received information that you might have a gun on you. I want to patch you down for our safety, and you're free to go, right? Really, in all my years, I've never seen quite that in a case. But Judge Greenway did not make an adverse credibility determination, and I think it's only the free to go where he's described that as balderdash. Now, did he, do you think, meant that Crandall was never told he was free to go, or did he just find it kind of defied belief that any officer would say to Crandall, you are free to go, or don't we know? Or that if he said it, they'd really feel free to go. Sorry. I think it was that third- my understanding is that although he may have said it, the officers may have said it, he didn't find that they didn't say it. He said that that does not- that is not a factor that supports consent, and that ultimately someone would still feel constrained. So there was a show of authority, and he was seized, because he submitted to it. Because there were three uniformed officers. And in Drayton, the court explicitly found that three- that uniforms and holstered guns are not a factor that should mitigate in favor of a show of authority. So how should we go about analyzing this particular case? You have an anonymous tip, three officers approaching the individual. I guess two of them say they know him. As soon as they said the name, they knew him. And then you have a request, a statement to the officer saying, you're not being held. Can we pat you down? Is that correct? Yes. Now, how would you analyze that? Pursuant to the facts- pursuant to Drayton, all the facts in this case indicate that as a matter of law- But that's the conclusion. How would you go through the analysis? The judge here focused on the anonymous tip, did he not? Yes, Your Honor. Is that where you start? No, Your Honor. There's a separate analysis. The anonymous tip would be an analysis involving whether they had reasonable suspicion to approach him. But, however, as we've already observed, they had an alternative ground to approach him, which is they wanted to ask him a question. You were worse off- you were worse off here with the anonymous tip than you would have been without it. That's the irony. That's the irony. Yes. Officers who have- who aren't sure if they have a reasonable suspicion are doing the appropriate thing, and they're undertaking to investigate. Well, I'm going to ask Ms. Mack when she gets up. And she has to be expecting the questions that will come, because I think they'll probably come from all of us, although I can't speak for my brothers. What are they supposed to do? There is- I don't know where the- there's something in the recesses of my memory from the record where he was seen shooting the gun a couple of days earlier. I don't think the officers who stopped him knew that. But they did know that he had a gun. And what were they to do? I think following Judge Greenaway's reasoning- I don't- I know. They could do nothing. Correct? Yes, Your Honor. That's my reading of Judge Greenaway's- Because the tip, uncorroborated as it was, poisoned anything that followed. So they were worse off. Yes, Your Honor. They were worse off. They need an anti-tip line. Don't talk to us. Let me ask you this. Who's got the burden to show consent? The government has the burden to show consent. By a preponderance of the evidence, right? Yes. Okay. And was there, in your reading of the district court's decision, anything that indicates that consent was not given? Or did the district court not finally reach that? In other words- The district court decided it didn't need to reach that because consent was irrelevant. So would you agree that if we were inclined to agree with you, we would have to send this back to the district court to decide whether there was consent? Is that right? No, Your Honor. We are asking for reversal of the suppression and remand for further proceedings because there were no disputes of- Hold up. Yes. If you've just agreed with me that you have the burden to show consent, and if it's in fact true that the district court never reached the question of consent, then how do you escape having to make a case by a preponderance of the evidence to a fact finder that there was consent? Because the district court had a hearing, listened to the officers, heard the issues, and there are no facts on the record that would allow the court to find a finding of consent. And as a matter of law, there was no seizure. You mean of no consent. I'm sorry, of no consent. Well, aren't we sort of obligated to let the district court say that in the first instance if it's a finding of fact that you have to prove by a preponderance of the evidence? My argument is that the government met its burden to show that this was a consensual stop. All the facts were on the record, and it argued all the facts showing that it was a consensual stop. Did Mr. Crandall dispute that? Even if it went back, any finding to the contrary- I'm sorry. Finish that. Any finding to the contrary would be clearly erroneous. Really? Didn't the district court say on a couple of occasions, as emphasized by your opponents, that this happened so fast that it was all a jumble? In other words, you say there's nothing on the record to indicate something to the contrary. I'm wondering if the other side isn't going to be arguing, and certainly Judge Greenway's opinion might not be read to say, some things that are not quite as clearly in your favor as you're saying. The most important issue in terms of speed is whether the consent came before or after they touched him. There's no dispute that the consent came before they touched him. There's no requirement that officers are not allowed to be direct and ask immediately for consent, and if the defendant gives it and does not avail himself of the opportunity to think about it longer or ask further questions, that that consent is invalid. Well, isn't your best assertion that he did reach consent? Yes. That on this record the district court said there was consent, it just was consent that was tainted by the lack of reasonable suspicion in the anonymous tip? I think the fairest reading of the district court's decision is that even assuming there is consent. Okay. Well, that's what the district court did. Yes. Even assuming, just reading here. I'm not talking footnotes. But even if we take the best argument, that this was a very fast stop, that they told him in advance that they were suspicious of him, under Drayton and current law it would be clearly erroneous to decide that this was not a consensual stop. How about if you take it the way they say it? Well, you can't decide clearly erroneous if there hasn't been a factual determination. All I'm saying is that it would be as a matter of law. The determination of whether there's a seizure is a matter of law. Aren't we missing something? Does Mr. Crandall dispute that he gave consent? No, Your Honor. He does not at all? No, Your Honor. He did not at the hearing. On appeal, the public defender is arguing that this is not valid consent, that there was a show of authority that overwhelmed his consent. Okay. Let me just pose this to you. When you say it would be clearly erroneous to find otherwise, is there a way that this record can be viewed without reaching into the realm of clearly erroneous, where the interaction takes place so quickly that, as you put it, the consent was overborne or not? No, Your Honor. Okay. There is, and if you don't mind, I'm out of time. No, go right ahead. There is no requirement under law that judges, that officers approaching an individual take more time rather than less time in questioning someone to make them comfortable before asking for their consent. In fact, the opposite is apparent from the case law, finding that the longer officers spend asking seemingly innocuous questions, trying to gather reasonable suspicion, the more likely it is that they're effectuating a seizure. Right. And that by being direct, you know, the officers don't have control over the defendant's decision, the defendant's clarity of mind in granting their consent. And it would put them in an impossible position if they were to have to second guess. Sort of a damned if you, damned if you nothing. The granting of consent. Do you really mean it? So if you were analyzing this case, somebody just gave it to you to look at in the office, what is the first issue you would look at in this scenario? I would ask first, was there a consensual stop? And then. Isn't that put the cart before the horse? Wouldn't you ask first if there's a seizure? Yeah, I consider them part and parcel of the same question. There's no seizure if there was consent. And. He was asked to stop. He was asked to stop. He was asked to stop. Then he was asked if he would mind being patted down. Yes. And your argument would be he consented to both. So he was not seized. Yes, Your Honor. But wouldn't the first question be, was he seized? Was he seized? Yes, Your Honor. You say no because he consented to the stop. Correct. Yes, Your Honor. No further questions. Anything? Thank you. Thank you. Thank you. May it please the court. Lisa Mack from the Office of the Federal Public Defender with me at Council table is Louise Arkell. Also present in the gallery is my client, Mr. Ronald Crandell. No one, including Judge Greenaway, disputes the ability of officers where reasonable suspicion is lacking to approach an individual in a public area to pose questions and even request consent to search, right? That's not disputed. That's not disputed, Your Honor. But Judge Greenaway concluded, because there was an anonymous tip identifying your client as carrying a gun, that the officers could not approach him and could not request consent to search without reasonable suspicion, correct? On the facts of this case, yes. Because while no one disputes that under Drayton, police officers can approach someone with or without reasonable suspicion, on the facts of this case, as found by Judge Greenaway. They could have approached your client. Exactly. All right. What were they going to do then? This is my concern. What were they supposed to do? Let's assume the anonymous tip was not corroborated. They were told there was a man with a gun. What are they supposed to do? Well, if Your Honor would permit me to tie this into the rest of my answer for your first question, the difference between Drayton and what was found here was that the judge found there was immediately a stop based on what they did. What the case law directs officers to do when faced with a tip is to do what they're trained to do. That is, make observations. Here there was none made. For example, did they see? They saw him coming down the street, right? Yes. They knew who they were looking for. From the outset. They were told that they might as well have been told his name because the man coming down the street with the dreadlocks, with the brown tips, with the pants and the shirt in the same colors, they knew who it was. Your Honor, we know. And they couldn't stop him. And they were told he had a gun, but they can't stop him. That's your argument. That's Judge Greenaway's argument. They cannot stop him because there was not reasonable suspicion. Well, one thing I would dispute in Your Honor's question at the outset was they didn't know from the tip it was him. The tip left out that he had groceries and a white towel on his head. No, but they knew it was him. The tip had no location in it as well. Let's assume for argument's sake they knew it was him. Two of them said at the hearing, expression hearing, we knew instantly it was Ricky. Sure. And the towel didn't even cover his hair. They saw dreadlocks, blonde tips, and all of them seemed to testify that that was a relative, that was a pretty uncommon look, and so their mind went immediately to your client. But we're even beyond that because somebody said, one police officer was asked, did you see the blonde tips? He said, I didn't need to. I know the face. I know this guy. They immediately targeted my client. So let's assume they knew it was him. They cannot stop him. Yes? Is that your theory? My theory is that the Supreme Court has set out what officers are supposed to do when they receive a tip that is as scant as this one, and that is they are to do what they're trained to do, which is make observations. Did they see him make any suspicious movements? Did they see a gun outlined in the small of his back? Rather than go up and immediately frisk him, block his path, swoop in and frisk him, go up to him and start asking questions to try to verify the tip. But doesn't that introduce an incongruity? If I walk out of here on the 6th and Market, a police officer doesn't know me from Adam. That police officer, according to the Supreme Court, has the right to come up to me and say, you know, I'm looking here. Would you mind if I frisked you because there's been an incident here and we're just trying to protect ourselves? And I could say yes or no, but if I say yes, he goes ahead and does it. He's allowed to ask that question. He's allowed to ask me for identification. But in this case, because there was this, quote, anonymous tip, close quote, you're saying they can't do that. No, I'm not relying on the tip, Judge. What I'm saying is if they had gone up and done that, hello, Ricky, we're investigating parts of the tip. We'd like to talk to you about a gun. Can we have some identification? Can we frisk you? That would bring it within the ambit of drain. But that's not what happened here. That's not what the judge found happened based on the testimony of the officer. Even though they had a person and they knew him. This is not where there were five guys all wearing the same color shirt in the street. I mean, who was it? This is your client. They knew it was your client and they were told he was carrying a gun. But because of the anonymous tip, they could do nothing, right? That's exactly what the court said. They are worse off where there is a tip that someone is committing a crime than they would have been without it. They are not worse off unless they do what they did here, which is rather than investigate the tip, they immediately swoop in and frisk him. How are they going to investigate the tip? Let him go off? I apologize. You keep saying something, ma'am, that Ms. Mathis, that's throwing me. You keep saying that's not what they did here. I thought that for purposes of the district court's analysis, he assumed there was consent. I thought that the district court, you're implying that there was never any consent, but the district court's analysis seems to be founded on the assertion that there was consent, but it was tainted consent. So which is it? Was there no consent? Are you defending the district court's decision on the basis that his analysis was right, or are you defending it on the basis that his factual finding or his factual assumption was erroneous and that there was no consent? I am defending it on two bases, that his factual findings were supported by the records and that he was correct. Consent, if any, was tainted because the judge found, based on what happened. I'm having a hard time with you saying, Ms. Mack, that's not what happened here, because if we're going to argue on the basis of what the district court said, we have to assume that there was consent, right? Just as if it had happened the way Judge Ambrose described it, that it was just walk up and say, how are you doing, Mr. Crandall? I'd like to give you a frisk. And he says, okay. That's the baseline assumption for consent, right? So if we assume that and we were to follow the district court's logic, that consent is no good because the tip that led to the question was without reasonable suspicion. That's how I understand the district court's arc of logic to run. Where am I wrong about that? It's not that the consent is no good because of the tip. It's that the consent is no good because it came immediately on the heels of an illegal stop. The stop was illegal. It's illegal because of the lack of, you have to assume that the stop is a forcible stop, executed by officers acting on an improper tip. I mean, you're putting the rabbit back in the hat by saying illegal stop. What makes it illegal? It's the anonymous tip without reasonable suspicion, right? Right, because a reasonable person would not have felt free to leave. And so in that respect, I apologize, it is that the consent is tainted. But the point that the district court made is you can't just at some point get some type of consent and sanitize any errors. It has to be a valid consent, which under Supreme Court precedent, has to be attenuated from the illegality of the stop. So sanitizing the error, the error was the anonymous tip. Was the stop based solely on the anonymous tip without any corroboration or independent investigation. The police are better off hearing nothing than hearing something. If they had just walked up. They need to put out the anti-tip line. Don't call us because if you do, we can't stop people and talk to them. Well, they didn't just stop him to talk to him. They stopped him and frisked him. In the space of two seconds, they blocked his path and started stopping him. They saw him walking down the street. I understand this happened quickly, but he was coming down the street. This was not one of those things where, you know, all of a sudden, boom, boom, it's over. It's not. It was fast. It was quick. But even Judge Green, there's a little inconsistency in his opinion whether it was all in one act or whether it. But at the bottom line, there were three discreet things that happened very close together. Two seconds is an exaggeration. But it was quick. Well, respectfully, Your Honor, the judge found, based on the testimony of the officers before him, that, in fact, everything was simultaneously and that any consent came immediately on the heels of that stop. Immediately on the heels of the stop. Such that it can't be segregated. After the officers said what they said, Velez said what he said. Right. And the district court found that no reasonable person faced in that situation with three officers swooping down, blocking your path, saying, we think you have a gun and we'd like to pat you down for our protection, would have felt reasonable, would have felt free. Well, that's a separate case. Separate issue, right? That's whether the consent was overborne. Yes. That's the Drayton issue. That's not the fundamental point that you start with, which is Judge Greenway's point. Here's footnote nine from the district court's analysis. Drayton is in a positive. We don't even get to the Drayton overborne consent question, in other words. Drayton is in a posit because the government asked the court to ignore the tip. This court does not dispute the ability of officers to approach individuals in public areas to pose questions and even request consent to search. However, without the anonymous tip, there is no approach, there is no request for consent, there is no pat down. In other words, it seems unambiguous that the district court is saying, had there been no tip, this would not have been a problem. This is a problem because there was a tip without reasonable suspicion. How do we read that differently than that? Go ahead. You can answer that. Well, the way that I read that, and I was at the hearing below, and the way that I understood the court to be making that analysis was, regardless of whether you get there on an anonymous tip or some other way, there was a stop. And once you have a stop, you then have to determine if it was unlawful, which it was here for other reasons. If there was a stop, was the consent in any way attenuated from that stop? And here it wasn't because it was all part and parcel of the same simultaneous events. I think that the issue below, and the reason it's a little confusing, is that they can't be parsed out to evaluate one from the other. So I think the district court was saying, with respect to Drayton, Drayton presented a different factual situation of a slowly unfolding, more cooperative exchange. Because that's not what you have here, you can't separate out one from the other. I'm not so sure I would agree with that. Let me go back to the question that Judge Berry asked about seven minutes ago. What was a police officer to do? I think in this situation, the police officer should do what they were trained to do, which is make observations and speak to a suspect before rushing up to him, blocking his path, and starting to frisk him. Could they speak to him? I believe they could speak to him, Your Honor. So they can walk up to him, they can say, we want to speak to you, right? Yes. And then they can say to him, we want to pat you down. Why can't they say that then? They can. If they can walk up to him, where's the beef? The problem here is the way they did it. In Drayton, there were officers, everyone could leave, get on and off the bus, they did not block their path. Yes, they did. There was an officer standing at the entry to the bus. If anything, it was more of a show of authority than you have in this case. But in Drayton, there was somebody at the front and the back, but there was also testimony that people got off for sodas and for cigarettes and that the officer in the aisle did not block the aisle. You just have conceded that they could have stopped him. They could have said, can we talk to you? They have to keep moving when they say that. They cannot effectuate a stop within the meaning of the Fourth Amendment. That's right. Look, can we talk to you? He stops. We want to pat you down. He says, okay. Had that happened, it would have been a different case. How did it not happen? Because the judge found, based on the testimony before him, that everything happened so fast, the show of authority, the we believe you're armed, we believe you have a gun. So the argument really isn't that the anonymous tip was the problem. The argument is that it happened so quickly after they were conceitedly able to stop him. In other words, you're abandoning the argument that the anonymous tip tainted the consent, and now you're saying, again, that the consent was overborne, and therefore it's not a valid consent. We are arguing it was not a valid consent. It was overborne. We're not abandoning an argument with respect to the reasonable suspicion. We didn't present that argument because the government waived it. Well, but you say that you could stop him. You concede, yes or no? You concede they could have stopped him. They could have. They said, we want to talk to you. So it's not as if, as I posited earlier, under Judge Greenaway's analysis that because of the anonymous tip, they could do nothing. Their hands and mouths were tied. They could speak to him, and if they could speak to him, they could ask him, I assume, can we patch you down, right? They could approach him, yes, Judge. But for purposes of appeal, the issue was consent, which is why I am focusing on the finding of facts of the district court in that everything happened so fast. And he assumed consent. He assumed consent. Even assuming consent, it would have been overborne. But he also assumed, he also assumed they couldn't even have approached him because of the anonymous tip. That's because the tip was just not before the court. And you're not, you're disagreeing with that portion of his, of his analysis. No, I am not disagreeing with that portion. I am just saying for purposes of appeal, we're leaving the tip aside because the government is focusing on consent. But he, this case, according to Judge Greenaway, is all about, this case, his first sentence of his opinion, this case is about an anonymous tip. Well, that's because that was how it was presented below, Your Honor. The focus of the argument and the motions and the evidence was on the reasonable suspicion of the tip. The consent was a subsidiary argument. You are saying there's, put the anonymous tip aside. They could approach him. Anonymous tip aside, they could always, any police officer can always approach a suspect. That's not what happened here. And it's the overborne consent. What she's saying is that the facts were found differently by the district judge. Yes, Judge. You're saying consent was overborne, so it's not a valid consent. Any consent that was given was overborne, yes. Now, answer me this. In Drayton, there is an armed officer at the back of a bus. There's an armed officer at the front of the bus, kneeling on the driver's seat, right by the exit, looking down the road. So, obviously, if there's a scuffle, you know, in other words, they got the exits covered, right? And then there's the police officer walking down, showing his badge. He's armed, too, asking if he can search people, all right? And the Supreme Court says, the only reason this is a question is because we're in such close quarters in a bus. And, in fact, says, quote, it is beyond question that had this encounter occurred on the street, it would be constitutional, unquote. Three officers, armed, approaching people and saying, I want to search you. Unquestionable that it would be constitutional. So, if we assume for the sake of argument, and I understand you're saying, hey, that's just not the facts, but if we assume for the sake of argument that this unfolded as the police officer said, which is the three of us were walking down the street, Mr. Crayon will walk toward us. We said to him, hey, we'd like to pat you down. And he says, okay, what is this about? You can leave at any time. Yeah, what's this about? And it's only when they're reaching for the gun that he knocks him away, runs away, and the gun falls out. How is that? Now, I understand I'm asking you to assume the facts that the police officers testified to. If that is the way it unfolds, how is that not precisely what the Supreme Court said is, quote, beyond question constitutional? I'm out of time. May I answer? Of course. I believe there are two grounds for which that would not come within Drayton. And one is because the officer's testimony was that not just can we pat you down, we walk up to him. It's we stopped him. Officer Velez said that. And they both said he stopped for us. And we said to him, we believe you have a gun. We need to pat you down for our safety. Is the physical stop motion, I mean, if they had kept walking and had the conversation and frisked him as he walked, that would have been okay? Well, they blocked his path. He couldn't go anywhere. And once three armed officers tell you, we think you have a gun, no reason to walk. And a fact you don't mention, he was told by Velez he was free to leave. And I believe that that is perfunctory in this case, as the judge found. You say it's perfunctory, but that's the evidence in the case. He was told he was free to leave. After they told him, we believe you're armed. I don't think, as the judge found, that any reasonable person would believe that when three officers approach you and tell you, we think you're armed, you're free to leave. Well, the officer's testimony is a little bit different on this. One of the officers says he wasn't told that he had a gun until after he had given consent. The other one said it was before.  So those, Your Honor, are facts that I think are a little bit different than Drayton. Also, going back to your question about Drayton and taking the testimony as you presented it, I think the facts in Drayton were a little bit different, because unlike here where the officer said they approached him an arm's length away in a semicircle or in a line, blocking his path with a fence to the left, in Drayton, although officers were stationed, there was testimony that people were getting up, moving about, that the officer kneeling in the aisle way took care not to block people's paths, and that they were cooperative, slow exchanges with the passengers, explaining their purpose, explaining what they were doing, and then asking for consent. So I think that even going with the officer's testimony, the facts in Drayton are sufficiently distinct that this case does not come within Drayton, even assuming the facts as presented by the court. I am out of time, Your Honor. I would simply ask to sum up by saying that the district court had the testimony of the officers before him, was able to observe their credibility, observe their demeanor, based on the testimony, made findings of fact from which he concluded this was an unjustified stop, and consent, if any, was tainted. We would ask that this court not disturb those findings and affirm the ruling of the lower court. Thank you. Thank you. Rebuttal. First, I would just like to take issue with the assertion of the defendant that the court made a finding, a factual finding that there was an illegal stop. The court made a finding that there was an illegal stop based on the anonymous tip. Any finding that the subsequent events were tainted was a finding about the search, but it never actually made any other finding that there was a lack of consent. I would also like to speak a little bit more about Drayton. In Drayton, the officers had just arrested the partner of the person that Drayton was traveling with, and that was the person with whom Drayton shared his bag. And so Drayton was clearly focused on the fact that these officers had a lot of authority, and I think that that is more significant showing that he was in jeopardy than any understanding by Crandell that the officers had a tip. They cuffed his seatmate in front of him, right? Yes. Yes, Your Honor. Moreover, they didn't surround him. They approached him in a line on the street. He had a means of leaving the encounter. He was told he was free to go, therefore. And the officer's indication to him that he stopped him was as if, you know, I'm stopping you to ask you for the time. I'm stopping you to talk to you. It wasn't a legal conclusion that I seized him. What about the, obviously I don't think any of us believe it was, quote, a couple of seconds, close quote, which is actually what was used at the hearing. But how does the contemporaneous aspect of what occurred here affect your thinking? If things really happened so quickly, how could there not have been a seizure of this person? Your Honor, because the officers – And his consent overboard, or his will overboard. Yes, Your Honor. The officers, having asked the question, may we talk to you, and having informed the defendant that he's free to leave, which is actually more than was done in Drayton, have done all that we would ask of them that they would know to do in this context. After that, it falls to the defendant, if he has further questions or no clarity of mind, to seek further clarification about what their intent is or why they're there or whether he should leave. But that's as much, I think, as we can reasonably ask officers to do. They don't need to wait any longer. They know that there's a gun there. You know, if we have not found that they have reasonable suspicion, they have serious reasons to believe there's a gun. They don't want to delay. They don't know there's a gun yet. No, but they have reason to believe that there's a gun, and they don't want to delay any longer, having gone through. Would you say we can't use the reason to believe? Yeah, indeed. No, I'm not saying that that's – I'm not suggesting that that's a reason to stop him. That's the reason – that would be – I'm not suggesting that there was reasonable suspicion to stop him. I'm just saying that in terms of the – what would be a reasonable pace to an encounter, that the officers, having asked him a question, may we talk to you, and having told him that he's free to leave, have then given him all the information that he needs in order to assess this judgment pursuant to Drayton, as the court has found. We will take the case under advisement. It was well argued, and I think, speaking only for myself, Judge Greenaway's opinion on the none of us tip was very good. The question is, what do we do with it? Thank you.